IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

C.A. No. 1:22-cv-02933-REB-MEH

PHILLIP MEYER

    Plaintiff,
v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

    Defendants.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Phillip Meyer, by and through counsel, the Bovo Law Group, hereby move the Court for an Order of summary judgment against Defendant Massachusetts Mutual Life Insurance Company ("MMLI") and as grounds therefore state as follows:

### CERTIFICATE OF CONFERRAL

In compliance with D.C.COLO.LCivR 7.1(a), counsel for the Plaintiffs conferred with counsel for MMLI regarding this Motion. This Motion is OPPOSED

### INTRODUCTION

On April 29, 2016, Plaintiff sought medical treatment for stroke symptoms at UC Health Anschutz. Thereat he was diagnosed with, among other things, a "Small right frontal lobes cortical infarct is slight subacute to chronic in age with associated cortical laminar necrosis" [and an] "Old left caudate head infarct." **Exhibit 1.** In September of 2002[1], the Plaintiff had applied

---

[1] **Exhibit 2, page 27.**

and was approved for a long-term care policy ("the Policy") offered by MMLI which Policy was in effect in April of 2016 and remain in effect today. The Policy is attached hereto as **Exhibit 2**.

According to the express terms of the Policy, an insured is entitled to benefits upon demonstrating

> While this Policy is in force, you will be eligible for benefits if you are Chronically Ill. This means that within the previous 12 months, you have been certified by a Licensed Health Care Practitioner as:
>
> - being unable to perform, without Substantial Assistance, at least two Activities of Daily Living for an expected period of at least 90 days due to loss of functional capacity; or
>
> - having a Severe Cognitive Impairment.

**Exhibit 2, page 10.**

Pursuant to the terms of the Policy, the Plaintiff reported his claim and on or about September 29, 2016, he submitted the requisite "Claim for Long Term Care – Claimant's Statement" form provided to him by MMLI. **Exhibit 3**. On that claim form, the Plaintiff indicated that he was suffering from severe cognitive impairment described as "memory loss, paresthesia, cerebral vascular accident." He also indicated that he needed assistance with three "Activities of Daily Living". **Id**. Plaintiff applied for benefits under both eligibility paths described above.

In direct contravention to the express terms of the Policy, MMLI took nearly 2 years to finally approve the Plaintiff's claim. MMLI approved his claim and paid benefits owed after conceding that the Plaintiff had established that he was Chronically Ill due to Severe Cognitive Impairment. However, MMLI testified that it did not ever consider Plaintiff's claim for benefits under the Activities of Daily Living prong of the eligibility section.

The F.R.C.P. Rule 30(b)(6) designee for MMLI testified this:

```
25 Q Do you know what kind of experience and

 1 training Dr. Rippeth possesses regarding Mr. Meyer's
 2 physical abilities?
 3 A No.
 4 Q Do you think that's important?
 5 A I don't believe it was important in this claim
 6 because he filed a claim for cognitive impairment.
```

**Exhibit 4**, 30(b)(6) deposition, page 32, line 25 – page 33, line 6. (Emphasis Added.)

And later:

```
 1 If you saw him doing these other
 2 activities, why didn't you go back and see if he's able
 3 to do these bathing -- these daily living activities,
 4 such as bathing, continence and dressing?
 5 A The claim was filed for -- based on a severe
 6 cognitive impairment, and that's what we were reviewing.
```

**Id**., page 45, lines 1-6. (Emphasis Added.)

Approximately 2 years later, MMLI was informed by two of its retained neuropsychologists that the Plaintiff *was* Severely Cognitively Impaired and entitled to a continuation of benefits. MMLI then shared several minutes of video surveillance surreptitiously shot by MMLI's agents. In that video, the Plaintiff was observed driving his car a short distance and shopping at 2 stores and a fast-food location. Based on the images in the video, the neuropsychologists determined that there was not sufficient evidence to conclude that the Plaintiff was Severely Cognitively Impaired. Thereafter, on October 15, 2020, MMLI notified the Plaintiff that his benefits were terminated due to the fact that MMLI's neuropsychologist's opinion changed after viewing the surveillance footage. **Exhibit 5**.

In 2016, Plaintiff applied for benefits due to his Severe Cognitive Impairment AND his need for substantial assistance with 2 or more Activities of Daily Living. MMLI approved his benefits (for 2 years) based on their conclusion that he was Severely Cognitively Impaired. MMLI later concluded that he was NOT Severely Cognitively Impaired and summarily terminated Plaintiff's benefits.

It is now 2024, nearly 8 years after the Plaintiff applied for benefits due to his need for substantial assistance with 2 or more Activities of Daily Living, and MMLI has not investigated, approved or denied his claim. As such, Plaintiff is entitled to an Order of this Honorable Court finding the Defendant in breach of the express terms of the policy. Moreover, given that the claim has not been accepted or denied after nearly 8 years, Plaintiff submits that this Honorable Court should similarly enter an Order deeming that said breach was reckless as a matter of law. Finally, Plaintiff submits that the Court should enter an Order deeming this 8 year delay as unreasonable as a matter of law.

After the institution of litigation, MMLI asserted a counterclaim against the Plaintiff alleging some manner of fraud and seeking the relief of rescission of the Policy. None of the purported "fraud" alleged by the Defendant is claimed to have occurred as a part of a scheme or artifice to dupe or trick MMLI into accepting coverage at the inception of the policy. MMLI accepted coverage in A plain reading of the Policy reveals that the Policy cannot be rescinded after 2 years subsequent to the acceptance of coverage unless it can be demonstrated that the applicant knowingly and intentionally misrepresented relevant facts about the applicant's health

4

in an effort to dupe or trick the insurer into accepting coverage when it ordinarily would have denied the same[2]. The policy states:

Incontestability

> If your Policy has been in force for less than six (6) months, upon a showing of misrepresentation that is material to the acceptance of coverage, we may rescind your Policy or deny an otherwise valid claim on your Policy.
>
> If your Policy has been in force for at least six (6) months, but less than two (2) years, and if we can show the misrepresentation is both material to the acceptance of coverage and that it pertains to the condition for which benefits are sought, we may rescind your Policy or deny an otherwise valid claim on your Policy.
>
> After this Policy has been in force for two (2) years it is not contestable upon the grounds of misrepresentation alone. After two (2) years, the Policy may be contested only upon a showing that you knowingly and intentionally misrepresented relevant facts relating to your health.

**Exhibit 2, page 16.**

The 2-year deadline on an insurer's ability to rescind or void a policy after coverage is accepted by the carrier is codified in Colorado at C.R.S. § 10-16-202 which addresses "required provisions in individual sickness and accident policies." Section (3) thereof expressly limits an insurer's ability to void such a policy after two years from the date of issue except for fraudulent misstatements made by the applicant for the policy. As none of Defendant's purported laundry list of "fraud" on the part of the Plaintiff occur within 2 years of acceptance of coverage, the relief sought by Defendant is precluded as a matter of law.

**LEGAL STANDARDS**

F.R.C.P. Rule 56 states in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of

---

[2] The Plaintiff applied for coverage on or about September 9, **2002**. See **Exhibit 2, page 27**.

each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary Judgment is a drastic remedy appropriate only in the clearest of cases.

In considering a motion for summary judgment, the Court is mindful that "summary judgment is a drastic remedy" and should be awarded with care. *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988.) Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a movant has satisfied the burden imposed by Rule 56, all factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980).

*Lopkoff v. Slater*, 898 F. Supp. 767, 772 (D. Colo. 1995), aff'd, 103 F.3d 144 (10th Cir. 1996)

As it pertains to an insurer's duty to investigate a first-party claim, the standard is as follows:

To succeed on a common law claim of bad faith breach of an insurance contract, "a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000). Colorado courts have held that it is reasonable for an insurer to challenge claims that are "fairly debatable." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011). Thus, under common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably. *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (citation omitted).

Colorado law also provides for a statutory law bad faith claim, whereby an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In other words, the question is whether a reasonable insurer under similar circumstances would

have denied or delayed payment of the claim. *Id.* The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman*, 261 P.3d at 497. However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *COPIC*, 192 P.3d at 524.

…

Implicit in the duty to investigate is the requirement that the investigation be adequate and fair. Adequacy and fairness means that the insurer has a duty to diligently search for evidence which supports [the] insured's claim and not merely seek evidence upholding its own interests.

*Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F.Supp.3d 998, 1003- 1004 (D.Colo.2020).

## ARGUMENT

**a. Activities of Daily Living.**

As discussed above, Plaintiff began experiencing the sequalae of stroke activity and sought emergency medical treatment therefor on or about April 29, 2016. Imaging of his brain revealed that he had suffered two strokes with the most recent being described as "subacute[3] to chronic" in age. **Exhibit 1, page 4**. The more recent stroke was associated with "associated cortical laminar necrosis[4]." **Id**. Plaintiff's subsequent medical records are replete with diagnoses and references documenting severely diminished cognitive abilities and diminished physical abilities.

---

[3] According to the National Institute of Health, a subacute injury is 4-14 days old.
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2267322/

[4] According to the National Institute of Health, cortical laminar necrosis (CLN) is the uncontrolled death of cells in the cerebral cortex and constitutes a permanent brain injury.
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2117425/#:~:text=Cortical%20laminar%20necrosis%20(CLN)%20is%20a%20permanent%20brain%20injury%20radiologically,anatomy%20of%20the%20cerebral%20cortex.

As discussed above, the Policy provides benefits to insured who become Chronically Ill while insured in one (or both) of two ways as defined by the policy. One is Chronically Ill if:

> This means that within the previous 12 months, you have been certified by a Licensed Health Care Practitioner as:
>
> - being unable to perform, without Substantial Assistance, at least two Activities of Daily Living for an expected period of at least 90 days due to loss of functional capacity; or
>
> - having a Severe Cognitive Impairment.

**Exhibit 2, page 10.**

The Plaintiff's submitted claim form shows that he was suffering from BOTH Severe Cognitive Impairment and limitations requiring assistance with two or more Activities of Daily Living. **Exhibit 3**. At that point, according to the plain and unambiguous language of the Policy, all that was required of the Plaintiff to receive benefits was to provide the certification from a Licensed Health Care Provider. **Exhibit 2, page 10.**

As it pertains solely to Plaintiff's claim for benefits under the Activities of Daily Living prong of the Policy, MMLI admits that it received such certification on or about March 27, 2018 when it received the required Attending Physician's Statement (APS) signed by Dr. Cynthia Smith. See MMLI's Amended Answer and Counter Claim, ECF 30, page 18, ¶ 9(f). Moreover, two months prior to receiving this APS, MMLI conducted a field visit at the Plaintiff's home and thereat confirmed that he needed assistance with several Activities of Daily Living[5]. In the report containing the conclusions reached during the field visit, it is noted that:

> In summary Mr. Meyer demonstrated that he is unable to get into his shower independently due to his poor balance. He requires that Mr. Nombre wash his back

---

[5] According to the Policy, the germane Activities of Daily Living are: bathing, continence, dressing, eating, toileting, and transferring. **Exhibit 2, page 5**.

and feet. Mr. Meyer is unable to put on his socks and cannot bend over to get his trousers on over his feet due to dizziness. He requires stand-by assistance to dress because he easily loses balance; likewise he is unable to navigate stairs safely without stand-by assistance. Mr. Meyer wears pads because he is incontinent of urine and sometimes feces. He requires reminders to change his pads because he forgets to perform personal hygiene.

**Exhibit 6, page 7**; MMLI's Amended Answer and Counter Claim, ECF 30, page 18, ¶ 9(e).

In summary, no later than March 27, 2018, Plaintiff's claim should have been approved solely on the Activities of Daily Living portion of the Policy. However, it was not. Instead, the claim was investigated and approved under the Severe Cognitive Impairment prong of the Policy. The approval date was April 11, 2018. See MMLI's Amended Answer and Counter Claim, ECF 30, page 19, ¶ 10.

MMLI paid benefits due to the Plaintiff being Chronically Ill due to Severe Cognitive Impairment for nearly 2 years. Then in March and September of 2020, MMLI conducted surreptitious surveillance of the Plaintiff and therein captured images of the Plaintiff driving and shopping. See MMLI's Amended Answer and Counter Claim, ECF 30, ¶¶ 19-43. Subsequent thereto, in October of 2020, MMLI denied the Plaintiff benefits deeming him not eligible for benefits due to Severe Cognitive Impairment[6].

Despite the Plaintiff submitting the correct claim forms and Attending Physician Statements and despite the fact that MMLI independently verified that the Plaintiff needed Substantial Assistance with 2 or more ADL's, MMLI did not investigate or process Plaintiff's claim under the ADL portion of the Policy. This fact is totally confessed as MMLI admitted this

---

[6] Plaintiff certainly does not concede that MMLI's analysis was accurate nor its denial justified. However, for purposes of this Motion, these issues have no bearing.

fact during the F.R.C.P. deposition of MMLI.  **Exhibit 4**, 30(b)(6) deposition, page 32, line 25 – page 33, line 6; and page 45, lines 1-6.

When MMLI denied the Plaintiff's benefits in October of 2020 based on Severe Cognitive Impairment, it still had not investigated, processed, or considered the Plaintiff's claim for benefits under Activities of Daily Living which claim had been pending for over 4 years at the time.  It is true that up to that point, MMLI's had paid benefits owed retroactively and MMLI's failure to investigate Plaintiff's ADL claim was largely harmless.  However, MMLI denied Plaintiff benefits without first investigating Plaintiff's ADL claim which it was obligated to do under the plain language of the Policy.

MMLI admitted that it breached the terms of the Policy during its deposition.  Due to this admission, this Honorable Court should enter summary judgment in favor of the Plaintiff on his breach of contract claim.  Plaintiff's benefits under the Policy were cut-off in October of 2020 with a pending an unresolved claim under the ADL portion of the Policy.  Plaintiff submits that MMLI's behavior was unreasonable and that MMLI knew that its failure to process Plaintiff's ADL claim was unreasonable because MMLI had itself developed evidence establishing grounds to approve Plaintiff's ADL claim when it performed the March 27, 2018 field inspection at Plaintiff's home.  See **Exhibit 6**.  There is no dispute that in October of 2020, when Plaintiff's benefits were denied, MMLI had established that Plaintiff's claim for benefits under the ADL portion of the Policy warranted approval.  As such, this Honorable Court should grant the Plaintiff summary judgment on his claim for bad faith breach of an insurance contract.

Finally, as it pertains to Plaintiff's statutory bad faith claim, Plaintiff humbly submits that an admitted 8-year delay in processing Plaintiff's claim for benefits is unreasonable on its face

and no reasonable jury could conclude otherwise. Moreover, as MMLI conclusively established Plaintiff's claim under the ADL portion of the Policy on March 27, 2018, the nearly 6-year delay in providing benefits thereunder is similarly unreasonable. Finally, MMLI's failure to approve or deny Plaintiff's benefits under the ADL portion of the Policy prior to denying him benefits under the previously approved Severe Cognitive Impairment portion of the Policy is unreasonable as a matter of law. This conclusion is supported by the testimony of MMLI that confirmed that from the time Plaintiff first submitted his claim for benefits to this very day, MMLI has never investigated or processed his claim under the ADL portion thereof. MMLI's behavior constitutes an "unreasonable delay" within the meaning of *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F.Supp.3d 998, (D.Colo.2020) and summary judgment in Plaintiff's favor is warranted.

    b.   Rescission of contact based on "Fraud"

MMLI seeks to rescind the Policy based on purported "fraud." Plaintiff strenuously denies that he perpetrated a fraud on MMLI in any way shape or form. However, such contentions amount to disputed issues of material fact which would preclude summary judgment on the claim for relief.

What is NOT in dispute is the fact that neither the Policy nor Colorado insurance law allow MMLI to seek the relief claimed in its counter claim.

MMLI seeks to have this Honorable Court "declare" the following as purported damages for allegedly fraudulent statements made by the Plaintiff in his Claim for Benefits dated September of 2016:

WHEREFORE, MassMutual respectfully requests the entry of an Order by this Court:

1. Declaring the Policy void due to the material misrepresentations made in Plaintiff's claim for benefits;
2. Declaring that no benefits are owed under the Policy;
3. Declaring that MassMutual may retain some or all of the premiums paid pursuant to the Policy;
4. Declaring that MassMutual is entitled to recover $265,581.13 in wrongfully paid benefits;
5. Awarding MassMutual compensatory damages;
6. Awarding MassMutual punitive damages;
7. Awarding MassMutual's attorneys' fees and costs; and
8. Granting MassMutual such other and further relief that the Court deems proper.

See MMLI's Amended Answer and Counter Claim, ECF 30, page 38.

Despite seeking a declaration that the Policy is "void", what MMLI is actually requesting is that the Policy be rescinded and that it be returned to the *status quo ante*. In other words, MMLI wants out of the contract and wants all of its money back. The relief sought, rescission, is not available to MMLI based on a plain reading of the Policy and through the application of Colorado insurance law which directly addresses this issue.

The Policy itself declares that it is "renewable for life."

**RENEWABILITY:** This Policy is guaranteed renewable for life. To renew, pay the premium due by the Premium Due Date or within the Grace Period. We cannot cancel or refuse to renew this Policy. Premiums are subject to change. We can only change the premium for this Policy if we change premiums for everyone in your state with the same Policy form. We will give you at least 31 days written notice at your last address shown in our records before we change your premium.

**Exhibit 2**, page 2.

The Policy guarantees that it can never be cancelled. There are no stated exceptions to this plainly material term.

As previously discussed, the policy is not contestable after 2 years following approval. The Policy states:

After this Policy has been in force for two (2) years it is not contestable upon the

12

grounds of misrepresentation alone. After two (2) years, the Policy may be contested only upon a showing that you knowingly and intentionally misrepresented relevant facts relating to your health.

**Exhibit 2, page 16.**

Colorado insurance law further legally precludes an insurer from seeking to rescind a contract beyond this 2-year barrier.   C.R.S. § 10-16-202 states in relevant part:

> (1) Except as provided in section 10-16-204, each such policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this section in the words in which the same appear in this section…
> …
> (3) Provisions as follows: "Time limit on certain defenses: (a) Two years after the date of issue of this policy no misstatements, **except fraudulent misstatements, made by the applicant in the application for such policy** shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two-year period…

(Emphasis Added.)

MMLI's entire counterclaim for fraud is based on about 6 minutes of video and 3 caregiver timesheets which were not filled out by the Plaintiff but which the Plaintiff signed. The video and the timesheets were created in March of 2020.  ECF 30, ¶¶ 19-43.  March of 2020 is approximately 16 years beyond the deadline to seek rescission of the Policy.  As the Policy cannot be cancelled and cannot be rescinded, the relief sought by MMLI through its "fraud" counterclaim should be denied as a matter of law.

**REQUEST FOR ORAL ARGUMENT**

Plaintiff humbly submits that this Honorable Court could be aided in its analysis through oral argument of Counsel and undersigned counsel humbly seeks the same.

Respectfully submitted,

BOVO LAW GROUP, LLC

*s/ Todd F. Bovo*
Todd F. Bovo
650 S. Cherry Street, Suite 1400
Denver, CO 80246
Phone: (303) 333-4686
Fax: (303) 595-5334
Email: todd@bovolaw.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that this Motion was electronically served via email to the following on this 16th day of January, 2023:

Franziski R. Mangot, Esq.
Nolan B. Tully, Esq.
Megan Farooqui, Esq.
FAEGRE DRINKER BIDDLE & REATH LLP
1144 Fifteenth Street, Suite 3400
Denver, CO 80202
Phone: 303-607-3500
Franziska.mangot@faegredrinker.com
Nolan.tully@faegredrinker.com
Megan.farooqui@faegredrinker.com

*S/* Mark Smith
Mark Smith