**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 22-cv-2933-REB-MEH

PHILLIP MEYER,

    Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,

    Defendant.

## ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) the motion contained in **Massachusetts Mutual Life Insurance Company's Memorandum of Law in Support of Motion for Summary Judgment** [#48],[1] filed January 16, 2024; and (2) **Plaintiff's Motion for Summary Judgment** [#50], filed January 17, 2024.[2]  I grant defendant's motion and deny plaintiff's motion.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

---

[1] "[#48]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the motions stand submitted on the briefs, and plaintiff's request for oral argument is denied (**Plf. Motion** at 13). *Cf.* FED. R. CIV. P. 56(c) and (d).  *Geear v. Boulder Community Hospital,* 844 F.2d 764, 766 (10th Cir.) (hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), ***cert. denied***, 109 S.Ct. 312 (1988).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of his claim or affirmative defense. ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518.[3]

---

[3] However, the fact that the parties have filed cross-motions for summary judgment does not necessarily indicate summary judgment is proper. ***See Atlantic Richfield Co. v. Farm Credit Bank of Wichita***, 226 F.3d 1138, 1148 (10th Cir. 2000); ***James Barlow Family Limited Partnership v. David M. Munson, Inc.***, 132 F.3d 1316, 1319 (10th Cir. 1997).  "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." ***Buell Cabinet Co. v. Sudduth***, 608 F.2d 431, 433 (10th Cir. 1979).

All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

In September 2002, plaintiff Phillip Meyer purchased a long-term care policy from defendant Massachusetts Mutual Life Insurance Company ("MMLI").  The policy provides benefits if the insured becomes "chronically ill" under either of two definitions.  First, an insured is considered chronically ill if he has a "severe cognitive impairment," that is, the "deterioration or loss of intellectual capacity, which requires Substantial Supervision by another person to protect yourself or others from threats to health and safety."  (**Plf. Motion App.**, Exh. 2 at 9, 8.) "'Substantial supervision' means continual supervision by another person to protect you or others from threats to health or safety[.]"  (***Id.***, Exh. 2 at 8.)  Second, an insured will be considered chronically ill if he requires "substantial assistance" with at least two "activities of daily living" – i.e., bathing, continence, dressing, eating, toileting, and transferring.  (***Id.***, Exh. 2 at 9, 4.) "Substantial assistance means either "hands-on assistance" ("the physical assistance of another person without which [the insured] would be unable to perform" activities of daily living) or "stand-by assistance" ("the presence of another person within arm's reach of [the insured] that is necessary to prevent, by physical intervention, injury to [the insured]" while he performs activities of daily living).  (***Id.***, Exh. 2 at 5, 8.)

On April 29, 2016, Mr. Meyer presented to the emergency room complaining of numbness in his left arm.  While an MRI showed evidence of a past stroke, his

symptoms at the time of the visit were considered most consistent with anxiety.  He declined further testing and was discharged that evening without being admitted to the hospital.  (*See* **Def. Motion App.**, Exh. 2 at 2-3.)  After speaking with MMLI representatives by phone and receiving the appropriate forms, Mr. Meyer submitted a claim statement on September 29, 2016, asserting he suffered from memory loss, paresthesia,[4] and cerebral vascular accident for which he claimed his treatment during his April 2016 emergency room visit.  He also asserted he needed stand-by assistance with bathing, dressing, and transferring.  (**Def. Motion App.**, Exh. 6 at 1.)

To assess this claim, MMLI requested medical records and statements from Mr. Meyer's various medical providers.  It claims this evidence was insufficient to allow it to determine whether Mr. Meyer qualified for benefits.  Eventually, in January 2018, MMLI sent a registered nurse and a claim consultant to Mr. Meyer's home for a field visit.  A mini mental status examination conducted that day was found indicative of a mild cognitive impairment.  The examiners also concluded Mr. Meyer needed stand-by assistance with showering, dressing, and continence.  (*Id.*, Exh. 16 at 7-8.)

Based on these findings, as well as additional records received from other medical providers disclosed during the visit, MMLI engaged a psychologist to review the claim.  On April 4, 2018, she submitted a report concluding Mr. Meyer had a severe cognitive impairment.  (*Id.*, Exh. 18 at 12-13.)  One week later, MMLI approved Mr. Meyer's claim and paid him benefits retroactive to start of his eligibility date.

---

[4] That is, "the technical term for the sensation of tingling, burning, pricking or prickling, skin-crawling, itching, 'pins and needles' or numbness on or just underneath your skin."  Cleveland Clinic, *Paresthesia* (available at:  https://my.clevelandclinic.org/health/symptoms/24932-paresthesia) (last accessed:  April 23, 2024).)

4

In December 2019, MMLI sought to recertify Mr. Meyer's eligibility for benefits. (**See Plf. Motion App.**, Exh. 2 at 9 (insured is eligible for benefits if he is certified as chronically ill "within the previous 12 months").) It therefore sent certification forms and requested updated records from Mr. Meyer's medical providers. (**Def. Motion App.**, Exh. 21.) MMLI maintains these records failed to establish Mr. Meyer required substantial supervision, as required to show a severe cognitive impairment, or substantial assistance with activities of daily living. (**See id.**, Exhs. 22, 25.)

At the same time, MMLI conducted surveillance of Mr. Meyer. From March 10 through March 14, 2020, Mr. Meyer was observed and recorded driving himself to the grocery store, shopping independently, carrying groceries to his car, driving to a local fast food restaurant and using the drive-thru, and walking to and from his mailbox. (**See id.**, Exh. 26 at 2-3; Exhs. 27 & 28.) The court has reviewed the video evidence, and it clearly shows Mr. Meyer driving, walking, shopping, and bending over without assistance or, indeed, any apparent difficulty whatsoever.[5]

Based on this evidence, MMLI required Mr. Meyer to undergo an independent medical examination ("IME"), as provided by the policy. (**See Plf. Motion App.**, Exh. 2 at 13.) That examination was conducted on July 1, 2020, by psychologist Julie Rippeth. MMLI did not provide Dr. Rippeth with the video footage from its surveillance prior to the IME. In her examination, Dr. Rippeth noted Mr. Meyer walked slowly, used

---

[5] Additional surveillance was conducted during a seven-day period in September 2020. Although a caregiver was seen to come to Mr. Meyer's home on only one of those days, during which he stayed for approximately 75 minutes (**Def. Motion App.**, Exh. 33 at 2-4), Mr. Meyer reported a caregiver had been present each of those days from 7:00 to 9:00 a.m. (**id.**, Exh. 34 at 2). At his deposition, Mr. Meyer testified the caregiver was present each day for two hours, although not always at the same time, contrary to the representations on his caregiver log. (**Id.**, Exh. 37 at 112-115.)

5

a cane, and required the assistance of his aide to get out of his chair. (**Def. Motion App.**, Exh. 29 at 2.) Mr. Meyer reported he had round-the-clock assistance from caregivers and a live-in roommate. He claimed he had not driven in the previous four years. (*Id.*, Exh. 29 at 3-4.)[6]

After reviewing the medical records and assessing Mr. Meyer with a variety of tests, Dr. Rippeth found that while Mr. Meyer performed below predetermined performance validity benchmarks, their utility was limited in Mr. Meyer's case because such measures "have very poor specificity . . . for individuals with significant memory problems and dementia," a conclusion she found supported by the medical records and her own observations. She therefore considered the tests valid. (*Id.*, Exh. 29 at 21.) Ultimately, she concluded Mr. Meyer suffered from a severe cognitive impairment requiring daily supervision because he was unable to complete "complex daily tasks" such as, *inter alia*, shopping and driving. (*Id.*, Exh. 29 at 25.)

Thereafter, MMLI disclosed the surveillance report and video footage from March 10-14, 2020, to Dr. Rippeth. Having reviewed this evidence, Dr. Rippeth changed her opinion:

> While the additional information does not exclude the possibility that Mr. Meyer has a degree of cognitive impairment, it does provide enough evidence to conclude that [Mr. Meyer] has sufficient cognitive capacity to perform complex daily tasks, such as shopping and driving. Given

---

[6] Although MMLI also highlights Mr. Meyer's additional report that he had remained at home during the previous three months due to the COVID pandemic (**Def. Motion App.**, Exh. 29 at 4), that suggestion is not obviously false, as the surveillance period ended just one day after the pandemic was declared a national emergency in the United States, leading to the shutdowns and curtailment of many public activities. (*See* Federal Emergency Management Agency, *COVID-19 Emergency Declaration* (March 14, 2020) (available at: https://www.fema.gov/press-release/20210318/covid-19-emergency-declaration) (last accessed: April 23, 2024).)

>   the activities in which Mr. Meyer engaged, it also is more likely than not that he does not have dementia and does not have severe Cognitive Impairments per the policy definitions.

(*Id.*, Exh. 31 at 2.)  Concomitantly, Dr. Rippeth noted Mr. Meyer's prior test results could not be considered valid.  (*Id.*, Exh. 31 at 3.)  A subsequent reviewer went further, concluding the initial cognitive testing results were invalid, as Mr. Meyer "scored worse on effort testing than is typically seen among individuals with dementia."  Further, she noted inconsistencies between Mr. Meyer's self-reports of his abilities and the surveillance video evidence suggested he "ha[d] greater capacity to perform physical activities and cognitively demanding tasks when in a non-medical setting when he is not aware that he is being observed," calling into question the veracity of his self-reported limitations.  The reviewer thus concurred that Mr. Meyer did not have a severe cognitive impairment.  She noted too that the surveillance evidence showed he had the physical capacity to perform activities of daily living.  (*Id.*, Exh. 32 at 5.)

Accordingly, MMLI informed Mr. Meyer on October 15, 2020, that he no longer qualified for benefits under the policy.  This lawsuit followed.  Herein, Mr. Meyer alleges claims for breach of contract and statutory and common law bad faith.  MMLI moves for summary judgment on those claims.  I begin, however, with Mr. Meyer's request for summary judgment on the basis that MMLI, he maintains, has never investigated his claim for benefits based on his purported need for substantial assistance with activities of daily living.

This argument is, in a word, nonsense.  Mr. Meyer did not submit two separate claims; he submitted one claim with two alleged bases of eligibility.  Although his claim

7

ultimately was approved based on the finding of a severe cognitive impairment, the evidence before me plainly establishes that MMLI also investigated whether he qualified under the activities of daily living criteria.  The attending physician statement forms sent to Mr. Meyer's medical providers inquired as to whether he required assistance with activities of daily living.  (***See Def. Motion App.***, Exhs. 7, 10, 17.)  Even though none of these statements supported a finding that Mr. Meyer required such assistance, the field team MMLI sent to Mr. Meyer's home nevertheless clearly evaluated his need for such assistance.  (***See id.***, Exh. 16 at 5-7.)  That Mr. Meyer's claim was approved based instead on the finding of a severe cognitive impairment is irrelevant, since either basis was sufficient in itself to find him eligible.  Indeed, Mr. Meyer concedes as much.  (***See* Plf. Motion** at 10 (since MMLI approved claim and paid retroactive benefits, its "failure to investigate Plaintiff's ADL claim was largely harmless").)

   Mr. Meyer does not explain how he believes his parallel assertion of eligibility based on his need for assistance with activities of daily living survived, inchoate, after this initial approval, such that MMLI was required to reconsider it in connection with terminating his benefits.  Nevertheless, the evidence in the record is abundantly clear that not only did MMLI consider whether Mr. Meyer needed assistance with activities of daily living, but that he in fact did not qualify for benefits under this definition.  MMLI had objective video surveillance evidence showing Mr. Meyer walking, driving, shopping, and bending over unassisted, in utter contradiction to his reports to both MMLI and medical providers.  ***See Estate of Beauford v. Mesa County, Colorado***, 35

F.4th 1248, 1261 (10th Cir. 2022) ("We do not have to accept versions of the facts contradicted by objective evidence, such as video surveillance footage.") (citing **Scott v. Harris**, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

It is no answer for Mr. Meyer to point out that at other times shown on the videos he was accompanied by a caretaker. The videos do not substantiate a need for hands-on or stand-by assistance by the caretaker; Mr. Meyer still ambulates wholly independently of the caretaker. Thus, Mr. Meyer himself plainly does not *require* the assistance of a caretaker,[7] either continually or as a stand-by, which makes him ineligible for benefits under the policy. No reasonable juror could conclude that the failure to adjudicate this claim more formally constituted a breach of MMLI's duties under the contract or evidenced bad faith on its part. Mr. Meyer's motion for summary judgment on this basis therefore will be denied.

Contrastingly, MMLI is entitled to summary judgment on all claims brought herein. As regards the initial processing of the claim, the claim log MMLI has submitted shows its ongoing efforts to compile sufficient information to make a determination of Mr. Meyer's eligibility under the policy, efforts which were hampered by inconsistent and incomplete statements from Mr. Meyer's medical providers. Throughout this process, MMLI kept Mr. Meyer apprised of the status of his claim and answered his questions when he called. (**See Def. Motion App.**, Exh. 4 at 106-117.) Ultimately, in January 2018, MMLI conducted a field visit to flesh out the particulars of Mr. Meyer's

---

[7] There is, for instance, neither argument nor evidence suggesting Mr. Meyer had eluded his caretakers to venture out unaccompanied. In addition, the video evidence plainly contradicts Mr. Meyer's suggestion that his medical providers' unsuccessful attempts to convince him to use a cane establish the need for a cane. No reasonable juror viewing the video evidence could conclude Mr. Meyer actually requires a cane to walk.

alleged disabilities.  (*See id.*, Exh. 16.)  Thereafter, it promptly contacted the additional medical providers Mr. Meyer identified during the visit and received their records over the following two months.  (*Id.*, Exh. 4 at 130-132, 136.)  MMLI's internal reviewer then considered the record and issued a report on April 4, 2018 (*id.*, Exh. 18); one week later, MMLI notified Mr. Meyer it had approved his claim (*id.*, Exh. 19).

Aside from noting the length of time it took to adjudicate his claim, Mr. Meyer does not identify anything in these facts, nor any additional facts, which suggest MMLI breached the contract in the process of adjudicating his claim during this period.  *See K.N.J., Inc. v. Ames-Granite*, 2017 WL 1133431 at *2 (D. Colo. March 27, 2017) (elements of claim for breach of contract).  The policy provides for payment of benefits "as soon as" the insured submits a proper written proof of loss, that is, "a completed claim form and any necessary statements or bills which include the date, nature, and charges for all covered care you have received" showing he "satisf[ies] the Eligibility for Benefits provision," i.e., that he is chronically ill under one of the two definitions of the policy.  (**Plf. Motion App.**, Exh. 2 at 13, 9.)[8]  MMLI's obligation to pay benefits thus did not arise until Mr. Meyer established his qualification for benefits.  Summary judgment is appropriate as to this aspect of the breach of contract claim.

MMLI also is entitled to summary judgment on Mr. Meyer's claims for common law and statutory bad faith.  Under either rubric, Mr. Meyer must show MMLI

---

[8]  Mr. Meyer's suggestion that nothing in the policy required him to submit medical records at all is ridiculous.  There would be no need for the policy to identify "statements" and "bills" separately if the only documentation required was the insured's medical bills.  Nor does Mr. Meyer explain how it would be possible to establish his eligibility for benefits without records substantiating the existence of an underlying medical condition triggering coverage under the policy.  (*See* **Plf. Motion App.**, Exh. 2 at 9 (insured is eligible for benefits if certified as "chronically ill" by a licensed health care practitioner).)

unreasonably delayed or denied payment of his claim without a reasonable basis. ***Williams v. Owners Insurance Co.***, 621 Fed. Appx. 914, 919-18 (10th Cir. 2015). "In Colorado, acting 'without a reasonable basis' has been construed to mean pursuing a groundless position that is not supported by credible evidence." ***Cooper v. Shelter General Insurance Co.***, 653 F.Supp.3d 873, 878 (D. Colo. 2023) (citation and internal quotation marks omitted). The standard of reasonableness *vel non* is what a reasonable insurer would have done under similar circumstances, ***Masters v. Safeco Insurance Company of America***, 2021 WL 4326269 at *5 (D. Colo. Sept. 23, 2021); ***Estate of Morris v. COPIC Insurance Co.***, 192 P.3d 519, 523 (Colo. App. 2008), and is "determined objectively, based on proof of industry standards" ***Goodson v. American Standard Insurance Co.***, 89 P.3d 409, 415 (Colo. 2004).

Mr. Meyer has identified no facts which create a genuine dispute as to whether MMLI's consideration of his original claim for benefits was unreasonable.[9] He references only the fact of delay itself, which – unmoored from any evidence that it was unreasonable under the circumstances – is insufficient to create a triable issue of fact. Moreover, Mr. Meyer offers nothing to contradict MMLI's well-supported observations about its difficulty in collecting his medical records and fully completed provider statements. The record shows MMLI kept Mr. Meyer informed of the progress of his claim throughout. Nor does the record before me establish any disputed fact issue as

---

[9] Although the question of reasonableness under the circumstances is ordinarily a question of fact for the jury, ***Estate of Morris***, 192 P.3d at 524, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law," ***Zolman v. Pinnacol Assurance***, 261 P.3d 490, 497 (Colo. App. 2011), ***cert. denied***, 2011 WL 3276356 (Colo. Aug. 1, 2011). ***See also Traurig v. Owners Insurance Co.***, 2022 WL 843888 at *3 (D. Colo. March 22, 2022).

to whether MMLI's actions violated relevant industry standards.[10]  **See Goodson**, 89 P.3d at 415.  Summary judgment as to Mr. Meyer's bad faith claims, insofar as they are based on the processing of his initial claim for benefits, therefore is appropriate.

Nor does the evidence presented here show a triable fact issue as to whether MMLI breached the contract or engaged in bad faith in terminating Mr. Meyer's benefits in 2020.  The video surveillance plainly disproves any notion that Mr. Meyer requires "*continual* supervision by another person to protect [him] or others from threats to health or safety."  (**Plf. Motion App.**, Exh. 2 at 8 (emphasis added).)  Moreover, as both Dr. Rippeth and the medical records reveiwer noted, Mr. Meyer's ability to drive and shop independently utterly contradicts the suggestion that he has a cognitive impairment which meets the definitions of the policy.[11]  (**Def. Motion App.**, Exh. 31 at 2-3; Exh. 32 at 5.)  Mr. Meyer's suggestion that people who should not drive sometimes

---

[10]  While expert testimony suggesting MMLI breached industry standards for the processing of insurance claims is not an absolute necessity in cases such as this, **see American Family Mutual Insurance Co. v. Allen**, 102 P.3d 333, 344 (Colo. 2004), Mr. Meyer fails even to address – much less substantiate – the various violations of the Unfair Claims Practices Act alleged in his complaint (**see Complaint** ¶ 36 at 5-6 [#1], filed November 10, 2022).  Moreover, even though it appears Mr. Meyer *has* endorsed an industry standards expert (**see** [#49], filed January 16, 2024 (motion seeking to disqualify Mr. Meyer's industry standards expert)), he does not reference this expert's opinions anywhere in his response to MMLI's motion.  The court is neither required nor inclined to make arguments on behalf of a party which he himself has not raised.  **United States v. Davis**, 622 Fed. Appx. 758, 759 (10th Cir. 2015); **Carrazco v. Garfield County Sheriff Deputy Morrison**, 2023 WL 183799 at *6 (D. Colo. Jan. 13, 2023), **appeal dismissed**, 2023 WL 5207950 (10th Cir. June 30, 2023).  I therefore decline to peruse Mr. Meyer's response to the **Daubert** motion challenging his expert to attempt to divine whether he can establish a violation of industry standards.

[11]  Driving undoubtedly is a complex "highly dynamic activity, as the road conditions change constantly, the intentions and performance of other drivers and vehicles must be judged quickly and accurately, and the driver must attend constantly to managing the vehicle while identifying and mitigating potential safety threats."  (Bruce Simons-Morton & Johnathon P. Ehsani, National Library of Medicine, National Center for Biotechnology Information, *Learning to Drive Safely: Reasonable Expectations and Future Directions for the Learner Period* ¶ 2 (Oct. 19, 2016) ("Like other complex activities, driving is a) (available at:  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5647887/#:~:text=Like%20other%20complex%20activities%2C%20driving%20is%20a%20highly,vehicle%20while%20identifying%20and%20mitigating%20potential%20safety%20threats.) (last accessed:  April 23, 2024).)

do anyway is neither here nor there; the objective video evidence plainly establishes *Mr. Meyer* himself is able to drive, in a directed, purposeful way, to and from shops and restaurants, without becoming lost, forgetting where his car is parked, becoming disoriented, or requiring any assistance whatsoever.[12]  For these reasons, I find and conclude MMLI is entitled to summary judgment as to Mr. Meyer's claims.

Finally, I deny Mr. Meyer's motion for summary judgment as it relates to MMLI's counterclaim for fraud.  While Mr. Meyer maintains MMLI is *not* entitled to summary judgment on its counterclaim (which, to be clear, MMLI has not requested), he nevertheless seeks to prevent MMLI from voiding the policy as a remedy if fraud is found.  Although Mr. Meyer references the language of the policy, the remedy MMLI seeks is an equitable one.  The question whether that form of relief is appropriate is one better made in the context of a jury finding that Mr. Meyer committed fraud as alleged by MMLI.  I therefore decline the invitation to address the question prematurely and deny Mr. Meyer's motion for summary judgment on this basis.

**THEREFORE, IT IS ORDERED** as follows:

1. That the motion contained in **Massachusetts Mutual Life Insurance Company's Memorandum of Law in Support of Motion for Summary Judgment** [#48], filed January 16, 2024, is granted;

2. That **Plaintiff's Motion for Summary Judgment** [#50], filed January 17, 2024, is denied;

---

[12] I do not consider in any way Mr. Meyer's wholly unverified "evidence" that he later wrecked his car pulling out of the garage.  (***See* Plf. Resp.** at 8-10.)

3. That **Defendant/Counter-Plaintiff Massachusetts Mutual Life Insurance Company's Motion to Disqualify and Exclude the Report of Plaintiff/Counter-Defendant Phillip Meyer's Expert John Kezer** [#49], filed January 16, 2024, is denied as moot; and

4. That at the time judgment enters, judgment with prejudice shall enter on behalf of defendant, Massachusetts Mutual Life Insurance Company, and against plaintiff, Phillip, Meyer, as to Mr. Meyer's claims for breach of contract, common law bad faith, and statutory bad faith.

Dated April 26, 2024, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge